UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARVIN SPENCER,<br><br>Defendant. | FILE NO. 14-CR-322(1) (SRN/TNL)<br><br>REPORT & RECOMMENDATION |

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Marvin Spencer's Motion to Suppress Statements, Admissions, and Answers (ECF No. 34), Motion to Suppress Eyewitness Identifications (ECF No. 35), Motion to Suppress Statements (ECF No. 55), and Motion to Suppress Additional Statements (ECF No. 67). The Court held a motions hearing on December 10, 2014. (ECF No. 40.) At this hearing, Shannon Elkins of the Federal Public Defender's office represented Defendant. Assistant United States Attorney Thomas Hollenhorst represented the Government.

The Court heard testimony of Detective Mark Ganley of the Roseville Police Department. The Court received the following exhibits:

- Government Exhibit 1A is a CD containing a recording of the beginning of Detective Ganley's August 26, 2014 interview of Defendant;

- Government Exhibit 1B is a partial transcript of the beginning of Detective Ganley's August 26, 2014 interview of Defendant;

1

- Government Exhibit 2 is a sequential photo display that Detective Ganley administered on July 25, 2014;

- Defense Exhibits 1 and 2 are enhanced photographic stills taken from the video surveillance system at Pawn America in Roseville, Minnesota; and

- Defense Exhibit 3 is a collection of photographic stills taken from the video surveillance system at Pawn America in Roseville, Minnesota.

Ms. Elkins filed a memorandum in support of Defendant's Motion to Suppress Statements, Admissions, and Answers (ECF No. 34) and Motion to Suppress Eyewitness Identifications (ECF No. 35) on January 5, 2015. (ECF No. 44.) The next day, Defendant filed a *pro se* motion, asserting that his attorney had engaged in unethical conduct and violated his attorney-client privilege and requesting that he be appointed new counsel. (ECF No. 45.) Although the Court found no basis or credibility to Defendant's accusations against Ms. Elkins, who is a well-respected, capable and ethical criminal defense attorney, in the interest of justice and in an abundance of caution, the Court relieved Ms. Elkins of her assignment and appointed Derk Schwieger, a member of the CJA Conflicts panel, to continue Defendant's representation before this Court. (ECF No. 49.)

After being appointed new counsel, Defendant filed additional pre-trial motions, including another Motion to Suppress. (ECF No. 55; *see also* ECF Nos. 54 & 58.) The Court held a continued motions hearing on February 10, 2014. (ECF No. 61.) Mr. Schwieger appeared on behalf of Defendant. Mr. Hollenhorst appeared on behalf of the Government.

Defendant filed a third Motion to Suppress on February 20, 2015. (ECF No. 67.) The Court held another continued motions hearing on March 2, 2015. (ECF No. 69.) Mr. Schwieger appeared on behalf of Defendant. Mr. Hollenhorst and Assistant United States Attorney Benjamin Bejar appeared on behalf of the Government. The Court heard testimony from Officer Nicholas Wade of the Moline Police Department, Special Agent David Nygren of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and Defendant. The Court received the following exhibits:

- Government Exhibit 3 is a CD containing a video recording of the back seat of Officer Wade's patrol car from 11:17 a.m. to 12:29 p.m. on August 26, 2014;
- Government Exhibit 4 is a CD containing recordings of dispatch calls relating to Defendant on August 24, 2014;
- Government Exhibit 5 is Officer Wade's report and transcription of events and conversations that occurred on August 26, 2014; and
- Government Exhibit 6 is a copy of the Rock Island County Emergency Telephone System Board.

The parties submitted supplemental briefing on all of the motions, the latest of which was filed on March 12, 2015.

I.   **FINDINGS OF FACT**

   **A. Investigation Into the July 21, 2014 Robbery of Pawn America**

On July 21, 2014, Officer Ganley received a report of an armed robbery and shots fired at a Pawn America store in Roseville, Minnesota. (Dec. 10, 2014 Mot. Hr'g Tr. 6 ("Tr. 6").) One of the employees had been shot in the leg. (Tr. 6.) Among other things,

the suspects took jewelry from the Pawn America. (Tr. 6.) Investigators recovered shell casings from the store and the bullet from the victim's leg. (Tr. 6.)

During the course of the investigation, officers received a tip from DeKalb County, Georgia, that two people in possession of a large amount of jewelry and cash were purported to having been involved in a robbery in Minnesota. (Tr. 6.) The tipster Googled the information that the two people gave about the robbery, connected the information to the Pawn America robbery, and contacted authorities. (Tr. 6.)

Officers located the hotel where Marvin Spencer, Jr. ("Spencer Jr."), was staying, positively identified him, and took him into custody. (Tr. 6-7.) Officers obtained and executed a warrant to search Spencer Jr.'s cell phone. (Tr. 7.) On the phone, they found photographs of jewelry that matched the jewelry that had been stolen from the Roseville Pawn America. (Tr. 7.) The Pawn America manager was able to recognize his own writing on the price tag of at least one of the items in the photographs. (Tr. 7.) Investigators also determined that Spencer Jr. was in possession of the phone at the date and time the photographs were taken. (Tr. 7.)

Officer Ganley flew to DeKalb County to interview Spencer Jr., who identified Derrick Lynch and Defendant as the two people who had robbed the Roseville Pawn America. (Tr. 7.)

### B. Defendant's Arrest and Post-Arrest Statements to Officer Wade

Defendant was charged by warrant complaint in Ramsey County on July 28, 2014. (Tr. 8, 43.) Law enforcement in Moline, Illinois, received a tip that Defendant was staying at a house in the 2700 block of 11th Avenue in Moline. (Mar. 2, 2015 Mot. Hr'g

Tr. 17 ("Tr.3 17").) Moline police approached the house and used a bullhorn to request Defendant step outside. (Tr.3 62.) Defendant stepped outside with his hands behind his head, and Moline officers placed him under arrest. (Tr.3 63.) None of the arresting officers informed Defendant of his *Miranda* rights. (Tr.3 64.)

Shortly after Defendant's arrest, Moline Officer Nicholas Wade took custody of Defendant. (Tr.3 17; 63-64.) Officer Wade escorted Defendant to a squad car located approximately half a block away. (Tr.3 17; 64.) Officer Wade did not inform Defendant of his *Miranda* rights. (Tr. 48; 64.) Officer Wade placed Defendant in the squad car and drove him to the Moline Police Department. (Tr.3 28.)

While he was in the squad car, Defendant asked Officer Wade if he would be able to keep some cash that he had at the house where he was arrested. (Tr.3 27-28.) In order to answer the question, Officer Wade asked Defendant whether any drugs were in the house. (Tr.3 28.) Defendant answered that there was not, and Officer Wade told Defendant that he would probably be able to get his money back. (Tr.3 28.)

When the squad car reached the Moline Police Department, Officer Wade removed Defendant from the back seat and escorted him into an interview room. (Tr.3 29.) Officer Wade believed that federal investigators would be arriving shortly to interview Defendant. (Tr.3 29.) After a few minutes of waiting, Officer Wade learned that the officers he was expecting to arrive to interview Defendant would not be arriving for a few hours, so he retrieved Defendant from the interview room and escorted him back to the squad car in order to transport Defendant to the Rock Island County Jail. (Tr.3 29-30.)

On the way from the interview room to the squad car, Defendant asked Officer Wade what his warrant was for. (Tr.3 36; Gov't Ex. 3.) Officer Wade, relaying the information then at his disposal, told Defendant that the warrant was for second-degree murder. (Tr.3 37, 39; Gov't Ex. 5.) Defendant made a self-incriminating statement in response. (Tr.3 39; Gov't Ex. 5.)

**C. Defendant's Custodial Interview**

On August 26, 2014, law enforcement in Minnesota received a new tip that Defendant had been arrested in Moline, Illinois. (Tr. 8.) Upon hearing this information, Detective Ganley and Lieutenant Scott Williams drove to Moline to interview Defendant. (Tr. 9.)

After the officers arrived in Moline, Defendant was escorted to an interview cell adjacent to the lobby. (Tr. 10.) Detective Ganley and Lieutenant Williams were already in the interview room. (Tr. 10-11.) The officers were not armed, and they were not wearing uniforms. (Tr. 11.) According to Detective Ganley, Defendant did not appear intoxicated or unduly stressed. (Tr. 11.) The following exchange occurred as soon as Defendant entered the interview room:

| | |
|---|---|
| Ganley: | How are you? |
| Defendant: | Mm, okay. |
| Ganley: | We're not interrupting dinner, are we? |
| Defendant: | No. |
| Ganley: | Okay, my name is Mark. I am a detective with the Roseville Police Department. This is my boss, Scott. |

6

| | |
|---|---|
| Defendant: | Okay. How you all doing? |
| Ganley: | Good, how are you? |
| Defendant: | I'm doing fine. |
| Ganley: | The county attorney sent us down here to talk to you. Okay, now, I'm not here to play games. I am not here to insult you. I'm not, okay, we gone a long way to come down and talk to you. So, I have to read you something. You've, you've, you've been arrested before. You've been read the *Miranda* warning. Okay, I have to read it, I know you've been read it before, but I have to read it, okay? I want to tell you what's going on with your case, but let me get through this first, okay? |
| Defendant: | Okay. |
| Ganley: | You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you before any questioning if you wish. You can decide at any, let me start over. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements. Have you been read that before? |
| Defendant: | Um huh. |
| Ganley: | Okay, do you have any questions about this? |
| Defendant: | Nope, [unintelligible]. |
| Ganley: | So let me, let me just explain what's going on with your case . . . . |

(Gov't Exs. 1A, 1B.) Following this *Miranda* warning, Defendant spoke with Detective Ganley and Lieutenant Williams for about 20 minutes. (Gov't Ex. 1A.) Throughout the

7

conversation, Defendant did not ask for the questioning to cease, and he did not ask to be represented by an attorney. (*Id.*)

### D. Spencer's Statements to Aaronette Barclay

On September 5, 2014, Defendant was transported from Moline to Saint Paul, Minnesota. Aaronette Barclay, another prisoner bound for Saint Paul, was being transported in the same van. (Tr.3 50.) While the van was taking them to Saint Paul, Defendant and Barclay engaged in conversation about morality and religious beliefs. (Tr.3 52-53.) After she arrived in Saint Paul, Barclay informed staff at the Ramsey County jail of incriminating statements Defendant made during the trip. (Tr.3 51.) Ramsey County jail staff forwarded the information from Barclay to the Ramsey County District Attorney's Office, and one of the attorneys there forwarded the information to the Roseville Police Department. (Tr.3 51.)

Special Agent Nygren interviewed Barclay in January 2015. (Tr.3 55-56.) Special Agent Nygren testified that he was unaware of Barclay ever working for law enforcement before, during, or after the time she spent with Defendant between Moline and Saint Paul. (Tr.3 51-52.) Special Agent Nygren further testified that Barclay provided Defendant's statements to law enforcement without prompting, and that to his knowledge, Barclay has been given no special consideration or deals as a result of the information she provided law enforcement. (Tr.3 51-52.)

## II.   ANALYSIS

Defendant moves to suppress (1) statements made to Officer Nicholas Wade after his arrest without first being Mirandized, (2) statements made to law enforcement under

8

direct questioning without the benefit of counsel after judicial proceedings had been instituted against him, and (3) statements made to Barclay while Defendant was being transported from Moline to Saint Paul.

### A. Defendant's Post-Arrest Statements to Officer Wade

Defendant first argues that his statements to Officer Wade while he was being transported from the site of his arrest to the Moline Police Department and finally the Rock Island County Jail should be suppressed because he was not read his *Miranda* rights after he was placed under arrest.

A suspect's *Miranda* protections are triggered when he is both in custody and subject to police interrogation. *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir.), *cert. denied*, 503 U.S. 1011 (1992). "Interrogation" can be either "express questioning" or words or actions "that the police should know are reasonably likely to elicit an incriminating response . . . ." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Lawrence*, 952 F.2d at 1036. "A voluntary statement made by a suspect not in response to interrogation," however, "is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." *Innis*, 446 U.S. at 299; *see also United States v. Griffin*, 922 F.2d 1343, 1356-57 (8th Cir. 1990).

A "'law enforcement officer's mere description of the evidence and of potential charges against a suspect, in direct response to the suspect's importuning, hardly can be classified as interrogatory.'" *United States v. Wipf*, 397 F.3d 677, 685 (8th Cir. 2005) (quoting *United States v. Conley*, 156 F.3d 78, 83 (1st Cir. 1998)). "Furthermore, an

inculpatory statement is not considered the product of custodial interrogation merely because it is made after the suspect has been told the charges against him." *Id.*

Here, Defendant had been arrested and was in the process of being transported to the Rock Island County Jail. Without prompting, Defendant voluntarily asked Officer Wade what was the basis for the outstanding warrant. Although the warrant was for attempted second-degree murder, the information relayed to Officer Wade was that the warrant was for second-degree murder. Reasonably relying on the information relayed from dispatch, Officer Wade informed Defendant that the warrant was for second-degree murder. Upon hearing Officer Wade's response, Defendant made self-incriminating statements.

Under these circumstances, this Court cannot say that Officer Wade's act of responding to Defendant's question regarding the basis of the warrant amounts to words or actions that Officer Wade should have known were reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 301. Defendant asked Officer Wade a direct question about the charge underlying the outstanding warrant for his arrest. Officer Wade did not interrogate Defendant for *Miranda* purposes by answering his question and informing him of the charge on the warrant to the best of his knowledge. Moreover, the circumstances of Defendant's statement were not such that the statement was an involuntary result of police coercion; Officer Wade did not mislead Defendant or lull him into a false sense of security. *See United States v. Ingle*, 157 F.3d 1147, 1150-51 (8th Cir. 1998). Nor does the record show that Officer Wade overcame Defendant's will by answering his question. Accordingly, based on all the files, records and proceedings

herein, the Court must deny Defendant's motion with respect to his statements to Officer Wade.

## B. Defendant's Custodial Interview

Defendant also moves to suppress statements that he made during his custodial interview with Detective Ganley and Lieutenant Williams on August 26, 2014, arguing that the officers' interrogation of Defendant outside of the presence of an attorney violated Defendant's Sixth Amendment right to counsel.

A criminal defendant's right to counsel under the Sixth Amendment "guarantees an accused the right to rely on counsel as a medium between him and the authorities." *United States v. Bird*, 287 F.3d 709, 713 (8th Cir. 2002) (citing *Maine v. Moulton*, 474 U.S. 159, 176 (1985)). A statement that law enforcement deliberately elicits from an accused after he has been indicted must be suppressed. *Massiah v. United States*, 377 U.S. 201, 207 (1964); *Bird*, 287 F.3d at 713. As a general matter, however, "*Miranda* warnings are sufficient to advise a defendant of his Sixth Amendment right to counsel and . . . a valid waiver after *Miranda* warnings is a knowing waiver for Sixth Amendment purposes." *Patterson v. Illinois*, 487 U.S. 285, 296 (1988). Indeed,

> an accused who is admonished with the warnings prescribed by this Court in *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one. . . . "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."

*Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 422-23 (1986)); *United States v. Garlewicz*, 493 F.3d 933, 937 (8th Cir. 2007). A waiver of a defendant's *Miranda* rights—and by extension, his Sixth Amendment right to counsel—need not be express; waiver may be implied from the defendant's actions and words and is determined by the totality of the circumstances. *Burbine*, 475 U.S. at 421; *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. House*, 939 F.2d 659, 662 (8th Cir. 1991).

Defendant argues that he did not validly waive his Sixth Amendment right to counsel, relying on *Garlewicz*, 493 F.3d 933. *Garlewicz* is on point to the extent that it, like the present matter, concerns the direct questioning of a criminal defendant outside the presence of counsel after formal proceedings against the defendant had been initiated. In that case, Garlewicz had been arrested, charged with multiple drug offenses, and arraigned in state court. 493 F.3d at 934. A short time after the arraignment, the state court appointed an attorney to represent Garlewicz, but neither the court nor counsel advised Garlewicz of the appointment. *Id.* Garlewicz proceeded to file three written requests to meet with Officer McCarty, the chief drug investigator. *Id.* Officer McCarty met with Garlewicz and made an audio recording of the meeting. *Id.* at 935. At the beginning of the meeting, Officer McCarty read Garlewicz a standard *Miranda* warning. *Id.* Garlewicz signed a statement of rights form and a waiver of rights form and proceeded with the interview, during which he made incriminating statements. *Id.* The Eighth Circuit held that under the totality of the circumstances, Garlewicz had validly waived his Sixth Amendment right to counsel. *Id.* at 935-37.

Defendant relies on *Garlewicz* to argue that because (1) he did not initiate the interview himself, (2) he was only read a *Miranda* warning and was not provided a waiver of rights form, and (3) he did not sign a waiver of rights form, his statements must be suppressed. This Court disagrees.

At the outset, the fact that law enforcement initiated the interview, although it is a circumstance to be considered, does not necessarily invalidate Defendant's waiver. The question is not who initiated the interview, but whether Defendant waived his Sixth Amendment rights knowingly, intelligently, and voluntarily. *E.g.*, *United States v. House*, 939 F.2d 659, 662-63 (8th Cir. 1991).

Similarly, the manner in which Defendant was informed of his *Miranda* rights does not require suppression of any subsequent statements. Although "[t]he four warnings *Miranda* requires are invariable, . . . [the] Court has not dictated the words in which the essential information must be conveyed." *Florida v. Powell*, 559 U.S. 50, 60 (2010) (citations omitted). "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (quoting *California v. Prysock*, 453 U.S. 355, 361 (1981) (*per curiam*)). Detective Ganley's *Miranda* warning informed Defendant of the following: (1) his right to remain silent; (2) anything he said could and would be used against him in a court of law; (3) his right to talk to a lawyer before questioning; (4) if Defendant could not afford a lawyer, one would be appointed to represent him before any questioning; and (5) Defendant could decide to exercise these rights at any time and not answer any questions or make any statements. The fact that a transcription of his *Miranda* rights did

not accompany Detective Ganley's oral recitation of Defendant's *Miranda* rights does not affect whether Detective Ganley's oral recitation sufficiently informed Defendant of his rights. *E.g.*, *Innis*, 446 U.S. 291 (finding oral *Miranda* warning valid). Viewing the totality of the circumstances, the Court determines that Detective Ganley's warning adequately notified Defendant of his right to counsel.

Finally, Defendant argues the fact that he never signed a waiver of his rights renders his subsequent statements inadmissible. A valid waiver, however, "need not assume any particular form; it may be made in writing on a printed format or it may be made orally by replying to questions . . . ." *United States v. Zamarripa*, 544 F.2d 978, 981 (8th Cir. 1976). The existence of a valid waiver of rights is determined by the totality of the circumstances and "can be inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights." *House*, 939 F.2d at 662. Here, after Detective Ganley advised Defendant of his *Miranda* rights, Defendant stated that (1) he had heard them before and (2) he had no questions about them. He proceeded to answer the officers' questions for approximately 20 minutes. Defendant did not indicate that he wanted to talk to a lawyer or that he wanted the questioning to stop. His answers were clear and relevant to the questions asked, and he showed no signs of intoxication or confusion. Nothing in the record supports a finding that Defendant's will was overborne such that his waiver and subsequent statements were involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986). Accordingly, based on the totality of the circumstances, the Court determines that Defendant knowingly, intelligently and voluntarily waived his Sixth Amendment right to counsel.

The facts before the Court show that Detective Ganley informed Defendant of his *Miranda* rights as soon as the interview began. In response to being asked whether he had heard those rights before, Defendant responded that he had. Defendant then said that he did not have any questions about his rights. Defendant's answers were lucid and relevant to the questions asked, and nothing indicates that his decision-making ability was in any way hampered. Defendant was not persuaded to give incriminating statements while law enforcement knowingly isolated him from his counsel. *See Brewer v. Williams*, 430 U.S. 387 (1977). Nor was his participation in the interview induced by promises from the officers. Both Defendant and the officers maintained a conversational tone throughout the interview, and the interview lasted less than thirty minutes. Based on the totality of the circumstances, the Court determines that Defendant's statements to Detective Ganley and Lieutenant Williams were not obtained in violation of his *Miranda* rights. Accordingly, Defendant's motion to suppress such statements as obtained in violation of his Sixth Amendment rights must be denied.

### C. Statements Made to Barclay

Defendant also moves to suppress incriminating statements that he made to Barclay while the two of them were being transported from Moline to Saint Paul, arguing that Barclay was acting as an agent of law enforcement.

"The constraints of the . . . Fifth Amendment do not apply to purely private activity." *United States v. Garlock*, 19 F.3d 441, 442 (8th Cir. 1994). In order for actions by a private actor to be fairly attributed to the government for purposes of the Fifth Amendment, a defendant must demonstrate "that, in light of all the circumstances, [the

15

private individual] acted as an instrument or agent of the government." *Id.* (internal quotations and citation omitted). A defendant satisfies this test "by showing that the government exercised such coercive power or such significant encouragement that it is responsible for [the private individual's] conduct, or that the exercised powers are the exclusive prerogative of the government." *Id.* (internal quotations and citation omitted); *see also United States v. Sanchez*, 614 F.3d 876, 886 (8th Cir. 2010).

In support of his argument that Barclay was acting on behalf of the Government, Defendant offered only conjecture and innuendo. Special Agent Nygren, however, credibly testified that Barclay provided Defendant's statements to law enforcement without prompting, that Barclay stated she was not working for law enforcement, and that to his knowledge, Barclay has been given no special consideration or deals as a result of the information she provided law enforcement. The record is devoid of any evidence that law enforcement exercised such coercive power over Barclay that her actions should be attributed to the Government, or that Barclay exercised such coercive power over Defendant that his statements were the product of coercion. The record also lacks any facts to support Defendant's assertion that Barclay might be benefitting from the evidence she provided in this matter.

Based on the totality of the circumstances, the Court determines that Barclay was not acting as an agent of law enforcement when she spoke with Defendant on September

5, 2014.[1] Accordingly, Defendant's motion with respect to his statements to Barclay must be denied.

### D. Motion to Suppress Eyewitness Identification

Defendant moves to suppress the eyewitness identification, arguing that the photographic lineup was needlessly suggestive and the resulting identification was unreliable. The Government represents to the Court that it "will not offer in its case-in-chief any evidence of the photographic lineup, nor ask the victim to make an in-court identification of the defendant (other than to describe the actions of the man who shot him as corroborated by the video surveillance of the crime)." Mem. in Opp'n at 7. In light of the Government's representations, Defendant's Motion to Suppress the Eyewitness Identification must be denied as moot.

## III. RECOMMENDATION

Based on the totality of the circumstances, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motions to

---

[1] Even if Barclay's questioning had been at the request of law enforcement, Defendant's statements might arguably remain admissible. "[A]n incarcerated suspect is not entitled to *Miranda* warnings prior to questioning by an undercover agent posing as an inmate." *United States v. Ingle*, 157 F.3d 1147, 1150 (8th Cir. 1998) (citing *Illinois v. Perkins*, 496 U.S. 292, 300 (1990)). In *Ingle*, the Eighth Circuit held that "*Miranda* does not apply to a conversation between [a defendant] and two fellow inmates who had been encouraged by the government to elicit incriminating admissions." *Id.* (citation omitted). The record lacks any facts to support Defendant's argument that Barclay questioned him at law enforcement's behest. But even if those facts were undisputed, *Miranda* would not necessarily require that Defendant's statements to Barclay be suppressed. *See id.*; *Salkil v. Delo*, 990 F.2d 386, 387 (8th Cir. 1993). Defendant offered no facts that would support a finding that his statements to Barclay were the product of a "police-dominated atmosphere." *Perkins*, 496 U.S. at 296. Because this Court determines that Barclay was not acting at law enforcement's behest, however, it need not address this issue.

Suppress Statements (ECF Nos. 34, 55, 67) be **DENIED**, and Defendant's Motion to Suppress Eyewitness Identifications (ECF No. 35) be **DENIED AS MOOT.**

Dated:  April 13, 2015 					s/ Tony N. Leung
							Tony N. Leung
							United States Magistrate Judge
							District of Minnesota


							*United States v. Spencer*
							File No. 14-cr-322(1) (SRN/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **April 27, 2015.**